UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FENDI ADELE S.R.L., FENDI S.R.L., and                        :
FENDI NORTH AMERICA, INC.                                    :
                                                             :
                               Plaintiffs,                   :    06 Civ. 0085 (LBS) (MHD)
                                                             :    ECF CASE
   - against -                                               :
                                                             :
BURLINGTON COAT FACTORY WAREHOUSE                            :
CORPORATION and COHOES FASHIONS, INC.,                       :
                                                             :
                               Defendants.                   :
------------------------------------------------------------------------X
BURLINGTON COAT FACTORY WAREHOUSE                            :
CORPORATION AND COHOES FASHIONS, INC.                        :
                                                             :
                    Defendants/Third-Party Plaintiffs,       :
                                                             :
   - against -                                               :
                                                             :
546332 BC LTD., D/B/A COLTON INTERNATIONAL,                  :
SUMMIT RESOURCE IMPORTS LLC,                                 :
EURO MODA, INC., MODA OGGI, INC., and                        :
ASHLEY REED TRADING, INC.,                                   :
                                                             :
                    Third-Party Defendants.                  :
------------------------------------------------------------------------X

**DEFENDANTS BURLINGTON COAT FACTORY WAREHOUSE
CORPORATION AND COHOES FASHIONS, INC.'S OFFER OF
PROOF PURSUANT TO FEDERAL RULE OF EVIDENCE 103(b)
AND PRE-HEARING MEMORANDUM**

BAINTON MCCARTHY LLC
Attorneys for Defendants and Third-Party Plaintiffs
Burlington Coat Factory Warehouse Corp. and Cohoes Fashions, Inc.
26 Broadway, Suite 2400
New York, New York 10004-1840
Tel.: 212.480.3500
Fax: 212.480.9557

**Preliminary Statement**

Fendi has been granted summary judgment on its claim against BCF for contempt of the 1987 Consent Injunction. In fashioning the appropriate remedy, the Court directed the parties to determine (a) BCF's net profits from unauthorized sales of Fendi-branded merchandise and (b) the date of such sales. Dates are relevant because a different quantum of relief should flow from sales that took place during different times, i.e., when Fendi was or should have been aware of BCF's violations of the 1987 Consent Injunction, yet did nothing about it as BCF's sales continued. BCF submits that Fendi should not be entitled to net profits arising from sales during that period and those profits are rightfully deducted from any recovery. Accordingly, as fully explained below, Fendi is entitled to recover $46,620 of BCF's net profits.

In addition, since the Court found that some of BCF's violations were willful, Fendi was ordered to submit a summary of its costs and attorney's fees. Fendi, however, has not separated the fees and costs associated with these contempt proceedings from those it incurred in connection with prosecuting its other claims, including the other four actions. Since Fendi's fee application is grossly exaggerated, outright denial is warranted.

**Procedural and Factual Background**

On October 10, 2007, the Honorable Leonard B. Sand issued a memorandum and order granting Fendi's motion for partial summary judgment holding BCF in contempt of the 1987 Consent Injunction. (App. Ex. A.[1]) The reference to this Court arises from that decision. *Fendi Adele, S.R.L., et al. v. Burlington Coat Factory Warehouse Corp., et al.*, 06 Civ. 0085, 2007 U.S. Dist. LEXIS 75812 (S.D.N.Y. Oct. 10, 2007).

---

[1] For the Court's convenience, a copy of this memorandum and order is included as Exhibit A in the Appendix submitted herewith. References to the exhibits in the Appendix are in the form "App. Ex. ___."

1

Judge Sand held that while BCF's actions prior to January 2006 were negligent, its sale of Fendi-branded perfume was a willful violation of the 1987 Consent Injunction. (App. Ex. A at 9.) Thus, the parties were directed to submit a summary of BCF's net profits from the unauthorized sales and the date of such sales. (*Id.* at 9-12.) Fendi was also permitted to submit a summary of its costs and fees associated with prosecuting its contempt claim due to the Court's finding of willfulness. (*Id.*)

On November 2, 2007, an oral argument was held before Judge Sand in connection with BCF's motion for reconsideration of the October 10th decision. (App. Ex. B.) During that argument, Judge Sand elaborated on the purpose of the hearing that has now been referred to this Court:

> THE COURT: Let me respond to the suggestion that since I have found that there has been a willful violation of the terms of the consent decree what the purpose is of any evidentiary hearing or why I want to know what the status was at the time of the particular sales, because the matter of sanctions and the quantum of sanctions for willfulness, it seems to me, is not a mechanical process, and I think different consequences in terms of dollars might very well flow from the sales that took place at a time when neither of the representatives of neither [sic] Fendi or Burlington were mindful of this consent decree than would take place of sales that took place thereafter, and that is why I indicated I wanted to know the quantum of sales and when they took place.

(App. Ex. B at 13-14.)

On November 19, 2007, Fendi filed an application for an "interim award" of legal fees and disbursements totaling $928,757.37. (App. Ex. C.) By letter to Judge Sand dated December 4, 2007, BCF timely objected to Fendi's Interim Fee Application. (App. Ex. D.)

Pursuant to Judge Sand's October 10th memorandum and order, Fendi engaged James Donohue of CRA International (collectively "CRA") for the purpose of determining BCF's profits from unauthorized sales. Mr. Donohue is a certified public accountant and an

2

experienced forensic accountant. To interface with CRA, BCF engaged Robert W. Berliner and Arcady Zaydenverg of Marks Paneth and Shron LLP ("MP&S"). Both Messrs. Berliner and Zaydenverg are CPA's and experienced forensic accountants.[2]

## Argument

### I.    Fendi is entitled to $46,620.

The factual issue to be determined at the evidentiary hearing is the amount of BCF's net profit during certain periods arising from sales of Fendi-branded products. (App. Ex. B at 6, 13-14.) As the Court stated, a different quantum of sanctions should flow from sales that occurred while Fendi was aware of those sales yet did nothing to stop them. (*Id.* at 13-14.) BCF submits that any award of profits should be reduced by profits occurring from sales during that time period.

#### A.    Net profits, not gross profits, should be determined.

In determining BCF's profits, net profits, rather than gross profits, should be calculated. In *Manhattan Indus. Inc. v. Sweater Bee By Banff, Ltd.*, 885 F.2d 1, 7 (2d Cir. 1989), a case upon which Judge Sand relied in his October 10th memorandum and order, the Second Circuit held:

> [W]e hold that Sweater Bee is entitled to those profits derived by Bayard from the unlawful sales of Bayard's Kimberly merchandise – namely, the profits from sales between [date] and [date], the period in which Bayard was in civil contempt of the district court's consent judgment. Of course by "profits" **we mean net profits**.

---

[2] BCF anticipates calling Mr. Berliner as an expert witness at the hearing on this matter. His CV and the cases in which he has testified during the last four years are included as Appendix Exhibit E. He is expected to provide the Court with his calculation of the volume and amount of sales of non-perfume and perfume Fendi-branded goods and its net profit from such sales summarized in Appendix Exhibits F through L. Mr. Berliner is also expected to express an opinion as to the general reliability of the sales data tracked in BCF's management information system and the reasonableness of the cost and expense data used to calculate net profit from sales of Fendi-branded goods. Mr. Berliner may also rebut any opinions on other topics expressed at the hearing by CRA.

3

(Emphasis added.) BCF has disclosed to Fendi precisely how it has calculated its net profit in respect of Fendi-branded goods during different periods summarized in Appendix Exhibits F through L. BCF intends to offer evidence (that it has already shared with Fendi) as to why this is an appropriate case to "approximate overhead in the absence of reliable data [specifically attributable to the products sold in violation of a consent injunction] pertaining to actual overhead." *Id.* at 8 (citations omitted); *see also Hamil America, Inc. v. GFI, a Div. of Goldtex, Inc.*, 193 F.3d 92, 104-06 (2d Cir. 1999).

### B.  Relevant Dates

Certain dates and events, which are not in dispute, are relevant to setting the time periods within which to calculate the net profits from BCF's sales:

- On May 19, 1987, the 1987 Consent Injunction was entered.

- On September 23, 2003, Fendi purchased a Fendi-branded handbag from a BCF store. (App. Ex. M.[3]) Although Fendi was aware that BCF was selling Fendi goods, it failed to assert its rights under the 1987 Consent Injunction and permitted BCF to continue selling.

- On November 24, 2003, Fendi informed Marta Fortanesi, Fendi's Director of Intellectual Property, that it believed the bag purchased on September 23rd was a counterfeit. (App. Ex. N). Again, Fendi sat on its rights.

---

[3] Appendix Exhibit M consists of an e-mail from Heike Schaus of LVMH Fashion Group's Intellectual Property Department to Ilaria Mantovani of Fendi, dated November 19, 2003, and a facsimile, dated November 27, 2003, from Ms. Mantovani to Mrs. Schaus. Both communications relate to the Fendi handbag that Fendi purchased in a BCF store on September 23, 2003. Enclosed within the facsimile is the receipt for Fendi's purchase and attached to the e-mail is a chain of custody form.

- Between April 2004 and February 2005, Fendi, BCF, and Third-Party Defendant 546332 BC Ltd. d/b/a Colton International had extensive discussions regarding the authenticity of the same item. (App. Ex. O.) Again, Fendi was aware of BCF's violations yet failed to even mention the 1987 Consent Injunction.

- On December 22, 2005, Fendi sent BCF a "cease and desist letter" that did remind BCF of the 1987 Consent Injunction. (App. Ex. P.)

- On October 10, 2007, the Court issued a memorandum and order granting Fendi's motion for partial summary judgment holding BCF in contempt of the 1987 Consent Injunction. (App. Ex. A.)

C.  **BCF's Calculations**

BCF has sorted its sales, costs and profit information by category and by certain time periods.

1.  **Transactions between May 19, 1987 and October 5, 2003**

Since May 19, 1987, BCF has not been permitted to purchase or sell Fendi-branded merchandise without prior approval from Fendi. Unfortunately, with the passage of time and the typical changes that occur in modern corporate environments, that day and that agreement faded from the parties' respective corporate memories. BCF's memory lapse manifested itself years later when it began selling Fendi goods.

On September 23, 2003, Fendi purchased a Fendi-branded item from BCF. (App. Ex. M.) By November 24, 2003, Fendi had reached its determination that the item sold by BCF was counterfeit. (App. Ex. N.) Thus, Fendi was or should have been aware of BCF's violations as early as September 23rd. In any event, Fendi remained silent.

While the end date for this time period should be September 22, 2003, BCF's computer records for transactions before October 3, 2004 can be retrieved only in quarterly increments. Sales prior to October 5, 2003 (the commencement date of BCF's fiscal quarter) represent sales that occurred when neither Fendi nor BCF were mindful of the 1987 Consent Injunction and Fendi had no good reason to communicate with BCF about trademark issues. BCF's net profit from unauthorized sales of Fendi-branded goods prior to October 5, 2003 was $44,137.

### 2.   Transactions between October 5, 2003 and December 22, 2005

The period between October 5, 2003 and December 22, 2005 was a period during which BCF contends that Fendi's conduct reasonably led BCF to believe that its sale of Fendi-branded goods was authorized. (*See* App. Exs. M-O.) Thus, to award Fendi its profits during this period would be inequitable. BCF's net profit from the sale of Fendi-branded goods during this period was $192,660.

Profits are awarded upon a finding of contempt not to punish the contemnor, but rather upon the principle of unjust enrichment. *Manhattan Industries, Inc.*, 885 F.2d at 5. Here, there is no question that once reminded of the 1987 Consent Injunction, BCF immediately ceased selling Fendi-branded products with the exception of perfume. BCF submits that it is fair to infer that had Fendi not sat on its rights for 27 months, BCF would not have made the sales during this 27-month period that resulted in a $192,660 net profit. BCF therefore contends that it would not be equitable to make it disgorge these profits.

### 3.   Transactions between December 23, 2005 and January 9, 2006

BCF is a large organization that can be crudely analogized to a "battleship" in terms of its ability to "turn on a dime." Upon receipt of Fendi's December 22, 2005 "cease and desist" letter, no one at BCF had a "magic wand" to waive so that all Fendi items could be immediately taken

6

off sale. To further complicate things as a practical matter, many senior executives and Fendi's outside counsel were all out of the office on Christmas Holiday and did not return until after New Year's Day. (*See, e.g.*, App. Ex. Q.) BCF contends that Monday, January 9, 2006, is a reasonable date by which to have "turned the battleship" upon being reminded of the 1987 Consent Injunction.

While it does not dispute receipt of Fendi's December 22nd letter, BCF respectfully submits that sales between that date and January 9, 2006 – the "turn the battleship date" – were not willful. BCF's net profit from the sale of Fendi-branded goods during this period was $9,589. The sales that resulted in this $9,589 net profit also would not have been made if Fendi had not sat on its rights for 27 months.

4. **Transactions between January 10, 2006 and October 10, 2007[4]**

The Court has found that BCF's sale of perfume after being reminded of the 1987 Consent Injunction was willful.[5] Because BCF does not own the perfume sold in its "leased department" it has no inventory records relating to that perfume. It does have records reflecting its sale of Fendi-branded perfume by SKU.

There are numerous reasons supporting BCF's practice of not taking into its inventory goods it does not own that Mr. Berliner can explain if the practice is criticized by Fendi. The most obvious reason for BCF's accounting treatment is that, if BCF had taken into inventory goods it did not own, it would have overstated its assets in its financial statements.

---

[4] Sales occurring after Judge Sand's October 10th memorandum and order are the subject of a separate application, in which Fendi is not seeking compensatory damages, but rather coercive ones. (*See* App. Ex. R. at 2-7, 33-34; Fendi's Mem. in Supp. of Additional Contempt Remedies, dated February 22, 2008, at 5, n. 1.)
[5] Respectfully, nothing contained herein should be viewed as a waiver of BCF's right to review Judge Sand's ruling at the appropriate time or to change its position about the lawfulness of such perfume sales.

BCF's net profit from the sale of Fendi-branded perfume after January 9, 2006 was $2,368. BCF's net profit from the sale of other Fendi-branded merchandise after Janaury 9, 2006 was $115. BCF respectfully submits that its sale of "other" Fendi-branded goods (including boys' suits) was not willful. BCF's total net profit for this period was $2,483.

Accordingly, BCF's total net profit for the entire period relevant to these proceedings was $248,869. (*See* App. Exs. F-L.) Fendi is entitled to $46,620 after rightfully deducting $9,589, representing BCF's net profit on sales of Fendi-branded products between December 23, 2005 and January 9, 2006, and $192,660 for the 27 months that Fendi was aware of BCF's violations, yet did nothing about it as BCF's sales continued.

## II. Fendi's application for costs and attorneys' fees is grossly exaggerated.

In calculating the amount of attorneys' fees to which Fendi is entitled in respect of Burlington's willful contempt, the Court should use the "lodestar approach, multiplying the number of hours plaintiff's attorneys **reasonably** expended on prosecuting the contempt by a reasonable billing rate." *Rudd v. Advance Bedding Corp.*, 95 Civ. 2099, 1997 U.S. Dist. LEXIS 21654, at *7 (E.D.N.Y. Feb. 20, 1997) (emphasis added); *see also Sizemore v. Elec. Pre-Press Sys., Inc.*, 90 Civ. 5042, 1993 U.S. Dist. LEXIS 17971 (S.D.N.Y. Dec. 21, 1993). Outright denial may be justified when the application is grossly and intolerably exaggerated, or manifestly in bad faith. *Rudd*, 1997 U.S. Dist. LEXIS at *9.

Here, even the most cursory review of Fendi's interim application leads to the conclusion that Fendi seeks to recover all of its attorneys' fees related to this action, not simply those "associated" with the contempt proceeding. (*See, e.g.,* App. Ex. C, Declaration of Richard L. Mattiaccio in Supp. of Fendi's App. for Interim Award of Legal Fees and Disbursements, executed on November 19, 2007, Ex. 1 at March 21, 2007 entry for "RLM" (Richard L.

8

Mattiacio, Esq.) ("Review and revise letter to magistrate regarding need for information regarding competing brands"); *see also* Endorsed Order, dated March 21, 2007 (Dolinger, J.) ("Plaintiff's application to compel production of documents concerning sales on non-Fendi goods is denied without prejudice upon a showing by a retained expert's affidavit explaining exactly what information is required to calculate lost profits and why"); Memorandum & Order, dated May 31, 2007 (Dolinger, J.) (denying Fendi's application, supported by declaration of retained expert Dr. Jeffrey A. Stec, to compel production of "a variety of detailed information about the defendants' pricing and sale volume of high fashion leather goods and accessories manufactured by TOD's, Coach, Gucci, Burberry, Louis Vuitton and Prada, as well as corporate documents reflecting studies and assessments of market responses to pricing and other factors in the sale of Fendi and other high-end branded goods").)

Obviously, once Judge Sand indicated that the 1987 Consent Injunction applied to goods owned by Scents of Worth, BCF would have much rather paid its net profits – or even twice its profits (a sum less than $5,000) – on the post-2005 sale of perfume to avoid legal expenses geometrically greater. BCF respectfully suggests that that fact be taken into account in determining whether Fendi's contention that it is entitled to recover $1 Million or more as the reasonable cost of proving a BCF's contempt is "grossly and intolerably exaggerated or manifestly in bad faith." As the Court insightfully observed on January 31, 2008, about "how much more pain can Burlington stand" with respect to these "contempt proceedings." (App. Ex. R at 7.)

In considering the issue of "exaggerated or in bad faith," BCF also respectfully submits that the Court consider how the vast majority of services described in Fendi's so-called interim fee application plainly have no association whatsoever with proving BCF's willful contempt.

9

(*See, e.g.,* App. Ex. C, Mattiaccio Decl. in Supp. of Fendi's App. for Interim Award of Legal Fees and Disbursements, Ex. 1 at December 19, 2005 entry for "VG" (Victor Genecin, Esq.) ("Receipt and review of expert reports on handbags purchased at Burlington, SmartBargains, Filene's, Cohoes, Annie Sez, Bluefly, Sophisticated Spirit"); December 21, 2005 entry for "ASC" (Anthony S. Cannatella, Esq.) ("Arrange for service of c&d letters on Filenes. Annie Sez and Smartbargains"); December 10, 2006 entry for "JAS" (Jonathan A. Selva, Esq.) ("Reviewed all pleadings in each of the following cases: Fendi v. Burlington; Fendi v. Ashley Reed; Fendi v. Filene's; Fendi v. Annie Sez; Fendi v. Wal-Mart; and Fendi v. Colton"); July 31, 2007 entry for "VG" ("Travel to Boston and preparation for depositions of M. Miller and C. Quinn"); August 1, 2007 entry for "SS" (Steven Skulnik, Esq.) ("Discussions re Wal-Mart materials to Stec").)

The conduct of Fendi's counsel in this case is fairly compared to that of Seyfarth, Shaw, Fairweather & Geraldson in *Robert Half, Inc. v. Romac Int'l, Inc.*, 101 F. Supp. 2d 223, 225 (S.D.N.Y. 2000) (awarding attorneys' fees and costs incurred in connection with original motion to hold defendant in contempt of consent injunction, but denying attorneys' fees and costs incurred in connection with amended motion based upon same conduct). For the same reasons that recovery of excessive fees was denied in that case, such recovery should be denied here.

## III. Pre-Hearing Proceedings

Before the Court begins the evidentiary hearing on this matter, BCF respectfully submits that Fendi should provide an explanation of Fendi's challenge to its calculation of its net profits. In the event that there is a dispute as to BCF's gross sales and gross profit/commission, BCF believes that such a dispute should also be identified before the hearing begins.

The most practical approach to identify and hopefully resolve any disagreements relating to net profit calculation would be for the professionals from CRA to meet with the professionals

10

from MP&S for the purpose of identifying the reasons for any disagreements in the parties' net profit calculations. (*See* App. Exs. F-L.) While the parties and their respective expert consultants have met and spoken frequently without the burden of counsel being present, BCF now believes that counsel should also be included in further discussions.

BCF also believes that a brief pre-hearing conference with the Court before commencing the evidentiary hearing would likely be productive.

Dated: New York, New York
March 5, 2008

BAINTON MCCARTHY LLC

By: _____
J. Joseph Bainton (JB-5934)
John J. Lee (JL-3577)
Carmine J. Castellano (CC-8484)

*Attorneys for Defendants and Third-Party Plaintiffs in Action No. 1*
Burlington Coat Factory Warehouse Corp. and Cohoes Fashions, Inc.
26 Broadway, Suite 2400
New York, New York 10004-1840
(212) 480-3500