UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FENDI ADELE S.R.L., FENDI S.R.L., and FENDI
NORTH AMERICA, INC.,

          Plaintiffs,

      v.

BURLINGTON COAT FACTORY WAREHOUSE
CORP. and COHOES FASHIONS, INC.,

          Defendants.

---

BURLINGTON COAT FACTORY WAREHOUSE
CORP. and COHOES FASHIONS, INC.,

          Defendants/Third Party Plaintiffs

      v.

546332 BC LTD., d/b/a COLTON INTERNATIONAL,
SUMMIT RESOURCES IMPORTS LLC, EURO
MODA, INC., MODA OGGI, INC., and ASHLEY
REED TRADING, INC.,

          Third Party Defendants

---

06 Civ. 85 (LBS) (MHD)

**MEMORANDUM &
ORDER**

SAND, J.

      Third Party Plaintiffs Burlington Coat Factory Warehouse Corporation and Cohoes

Fashion, Inc. (collectively known as "Burlington") have moved the Court for summary judgment

against Third Party Defendant Ashley Reed Trading, Inc. ("Ashley Reed"). For the reasons

provided below, summary judgment is granted.

### I.      Background[1]

---

[1] The Court presumes familiarity with the facts of the case. A detailed history of the underlying facts and procedural history of the case is provided in *Fendi Adele S.R.L. v. Burlington Coat Factory*, 689 F. Supp. 2d 585 (S.D.NY. 2009).

On October 10, 2007, this Court  granted partial summary judgment in favor of Plaintiffs Fendi Adele S.R.L., Fendi S.R.L., and Fendi North America (collectively known as "Fendi") and against Burlington, whom we found in contempt of court for violating a consent injunction, approved by this Court on May 19, 1987, in which it agreed not to "purchase or sell any merchandise bearing the Fendi trademark unless permission in writing is received from Fendi." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, No. 06 Civ. 86, 2007 U.S. Dist. LEXIS 75812, at *17–18 (S.D.N.Y. Oct. 10, 2007). We ordered Burlington to disgorge the profits it had made selling Fendi-marked goods in violation of the consent injunction. *Id.*  We also ordered Burlington to pay Fendi's attorney's fees and costs involved in litigating the contempt action. *Id.* We subsequently referred the matter to Magistrate Judge Dolinger for a report and recommendation as to the amount of the relief to be imposed. Endorsed Letter (Dec. 20, 2007), Dkt # 160.

On April 27, 2009, Magistrate Judge Dolinger filed a Report and Recommendation in which he recommended that the Court award Fendi a total of $2,528,768.00 in disgorgement and $541,913.65 in attorney's fees and costs. *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 303 (S.D.N.Y. 2009). On December 1, 2009, the Magistrate Judge issued another Report and Recommendation in which he recommended a method for calculating the prejudgment interest associated with the contempt damages. Dkt # 318. We adopted both of Magistrate Judge Dolinger's Report and Recommendations in their entirety and on February 16, 2010, the Clerk of the Court issued an Amended Judgment against Burlington, awarding Fendi relief totaling $4,657,148.64. Dkt. #326.

On February 8, 2010 we granted summary judgment on Fendi's remaining trademark counterfeiting, trademark dilution, and common law unfair competition claims against

Burlington and ordered Burlington to pay treble damages on the goods it sold after April 2004, when it received a cease and desist letter from Fendi. *Fendi Adele S.R.L, v. Burlington Coat Factory*, 689 F. Supp. 2d 585, 602–03 (S.D.N.Y. 2010) ("February 8 Order"). We also ordered Burlington to compensate Fendi for the attorney's fees and costs expended litigating the trademark and unfair competition claims. *Id.* Finally, we ordered Burlington to pay prejudgment interest on the disgorgement award. *Id.*

Fendi moved for partial reconsideration of the February 8 Order, arguing that treble damages should also be awarded on those goods Burlington sold prior to its receipt of the 2004 cease and desist letter. On March 27, 2010, we granted Fendi's motion because we found that, even prior to its receipt of the cease and desist letter, Burlington had "willfully infringed" on Fendi's trademarks and acted in "reckless disregard for Fendi's trademark rights." *Id.* at 608–09. We referred the matter to Magistrate Judge Dolinger to determine the appropriate amount of damages, attorney's fees, prejudgment interest, and costs. *Id.* at 603.

In a Report and Recommendation dated August 9, 2010 ("the August 9 R&R"), Magistrate Judge Dolinger recommended that Fendi be awarded an additional $5,626,568.91 in relief for Burlington's violations of federal and state trademark and unfair competition law. Dkt #355. If adopted by this Court, Magistrate Judge Dolinger's Report and Recommendation would have brought the total judgment imposed on Fendi by this Court in connection with this litigation to $10,283,717.55. However, on December 1, 2010, the parties reached an agreement in which, in exchange for the settlement of all claims against it, Burlington agreed to pay Fendi $10,050,000.00. Haigney Aff. Supp. Mot. Summ. J. ("Haigney Aff.") ¶ 9. This amount equals 97.7273% of what Fendi would have been awarded had we adopted all three of Magistrate Judge Dolinger's Report and Recommendations.

Burlington now moves the Court for summary judgment against Ashley Reed, one of the five vendors that sold Burlington the counterfeit goods at issue in this litigation. In the February 8 Order, we granted Burlington summary judgment on its indemnification claim against Ashley Reed and the other four distributors ("the Third Party Defendants"). We concluded that the Third Party Defendants, including Ashley Reed, had breached the express warranty of authenticity they made when they sold Burlington the counterfeit goods. *Fendi*, 689 F. Supp. 2d at 604. In the February 8 Order, we reached only the issue of the Third Party Defendants' liability, however. Burlington now seeks summary judgment on the amount that Burlington is entitled to recover from Ashley Reed.

## II.     Standard of Review

A motion for summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "genuine" if the evidence would justify a verdict for the non-moving party by a reasonable jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. *Id.* In determining whether a genuine dispute of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions, *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## III.     Discussion

4

Neither Burlington nor Ashley Reed dispute any of the facts underlying this dispute. *See* Third Party Def. Ashley Reed's Opp'n Burlington Mot. Summ. J. ("Ashley Reed Opp'n") at 2 (admitting the facts provided in Burlington's Rule 56.1 statement of facts). We therefore grant Burlington's motion for summary judgment, pursuant to Rule 56(a), and turn to the real issue in dispute: namely, the proper amount of damages, costs and attorney's fees, and prejudgment interest that Ashley Reed is required to indemnify Burlington.

### A.     Damages

In the August 9 R&R, Magistrate Judge Dolinger calculated that Burlington owed Fendi $3,912,963.00 in treble damages, $1,549.389.92 in attorney's fees, and $164,215.99 in costs arising out of Fendi's litigation of the trademark dilution, infringement and unfair competition claims. In total this amounted to a judgment against Burlington in the amount of $5,626,568.91 in connection with the trademark and unfair competition claims.

Burlington argues that under the terms of the indemnity agreement between the parties, Ashley Reed is required to indemnify it for a proportionate share of this entire judgment, once reduced to 97.7273% to take into account the reduction achieved as a result of settlement. Based on an analysis of its sales records from the relevant periods, it calculates that 5.73781% of the gross cost of the counterfeit Fendi goods at issue in this lawsuit originated from Ashley Reed. Haigney Aff. ¶18. Ashley Reed does not dispute this figure. Ashley Reed Opp'n at 2. Burlington therefore concludes that Ashley Reed must indemnify it for 5.73781% of 97.7273% of $5,498,692.60, or $315,504.53. Haigney Aff. ¶ 19.

Ashley Reed argues in response that, because it guaranteed to indemnify Burlington only against expenditures "occasioned by" allegations or legal actions that the goods it sold Burlington infringed on the trademark rights of a third party, it cannot be held responsible for

costs that were not proximately caused by the trademark infringement. Hence, Ashley Reed argues, it is required to indemnify Burlington only for that portion of the settlement payment that compensates Fendi for the profits that Burlington made on the Ashley Reed goods.  It is not, it argues, required to indemnify Burlington for either the treble damages, attorney's fees, or litigation costs portions of the settlement payment.

In order to resolve this dispute over the proper amount of damages, we turn to the language of the indemnity agreement. Paragraph 12 of the standard form Purchase Order that Ashley Reed signed each time it sold counterfeit goods to Burlington ("the indemnity agreement") states in relevant part:

> "Vendor agrees to indemnify and hold harmless Purchaser from and against any and all judgments, settlements, disbursements, costs (including reasonable attorney's fees) and other expenditures occasioned by any allegations, legal actions or other claims that merchandise purchased hereunder from Vendor infringes any patent, trademark, copyright or other proprietary right of any person, partnership, corporation or other entity…." Haigney Decl. Supp. Mot. Summ. J. Third-Party Defs. Ex. A at 3, ¶ 12.

Paragraph 13 of the Purchase Order specifies that "any dispute(s) with respect to the performance and/or interpretation of this contract…will be determined under the laws of the State of New Jersey." *Id.* ¶ 13.[2] Under New Jersey law, "[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally." *Ramos v. Browning Ferris Industries, Inc.*, 510 A.2d 1152, 1159-1161 (N.J. 1986). Clear and unambiguous contracts are enforced "according to [their] plain language." *Travelers Indem. Co. v. Dammann & Co.*, 594

---

[2] The Purchase Order also contains a forum selection clause which states that "any lawsuit(s) arising from any…dispute(s) [with respect to the performance and/or interpretation of this contract] shall be venued exclusively in the New Jersey Court for Burlington County." Haigney Decl. Supp. Mot. Summ. J. Third-Party Defs. Ex. A at 3, ¶ 13.  Because neither side has invoked this clause, we consider it waived for the purpose of this litigation. *See Ferraro Foods v. M/V Izzet Incekara*, 01 Civ. 2682 (RWS), 2001 U.S. Dist. LEXIS 12338, at *10 (S.D.N.Y. Aug. 20, 2001) ("An objection to venue may be waived under Fed. R. Civ. P. Rule 8(c) or 12(h) by failing to raise it in an answer or initial motion to dismiss."); Fed. R. Civ. P. 12(h) ("A party waives any defense [based on improper venue]…by… (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsible pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.").

F.3d 238, 255-256 (3d Cir. 2010). " When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." *Ramos*, 510 A.2d at 1159.

In this case, the promise to indemnify Burlington "from and against any and all judgments [or] settlements…occasioned by any allegations, legal actions or other claims that merchandise purchased hereunder from Vendor infringes any…trademark" appears sufficiently clear and sufficiently broad to include within its ambit attorney's fees and costs that Burlington paid in order to settle Fendi's trademark infringement claims. Attorney's fees and costs are common and proper subjects of indemnification agreements in New Jersey. *See, e.g.*, *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, No. 09-1724 (GEB-DEA), 2011 U.S. Dist. LEXIS 28593, at *3-6 (D.N.J. Mar. 21, 2011). We see no reason why the attorney's fees and costs portion of the settlement payment was any less "occasioned by" the trademark infringement claims than were those portions of the settlement payment compensating Fendi for the profits that Burlington made on the counterfeit goods.

However, we agree with Ashley Reed that it cannot be held responsible for that portion of the settlement payment stemming from the treble damages judgment. This is because, in New Jersey, courts may not enforce an indemnity agreement that indemnifies a person "against the civil consequences of his own willful act." *United States v. Carrara*, 49 F.3d 105, 109 (3d Cir. 1995) (quoting *Vargas v. Hudson County Bd. of Elections*, 949 F.2d 665, 673 (3d Cir. 1991)). To require Ashley Reed to compensate Burlington for the treble damages imposed as a result of what we found to be Burlington's willful infringement of Fendi's trademarks, *Fendi,* 689 F. Supp. 2d at 608, would be, in effect, to indemnify Burlington against the consequences of its own willful acts.

We thus conclude that Ashley Reed is liable for 5.73781% of the $1,713,605.91 in attorney's fees and costs that Magistrate Dolinger assessed against Burlington in connection to the trademark claims, reduced to 97.7273% of the original to take into account the reduction achieved as a result of settlement, or $96,088.85. We find that Ashley Reed is also liable for 5.73781% of that portion of Burlington's damages award that stemmed from Burlington's actual profits on the counterfeit goods, namely $1,304,321.00, once reduced to 97.7273% to take into account the settlement reduction. This amounts to $73,138.58. In total, we find that Ashley Reed is responsible for indemnifying Burlington for $169,227.43 of the settlement payment.

## B.    Legal Fees and Costs

Burlington argues that Ashley Reed also must indemnify it for 100% of the attorney's fees and costs that it incurred while defending against the trademark and unfair competition claims.  Burlington argues that Ashley Reed is responsible for 100% of these costs—rather than merely that portion constituting its proportionate share of the counterfeit merchandise at issue in this case (namely 5.73781%)— because Burlington would have been required to litigate these claims in entirely the same manner had there been no other suppliers of the counterfeit goods. Because these costs were, Burlington argues, necessary to the litigation of the trademark infringement claims relating to the Ashley Reed goods, they are properly subject to indemnification by Ashley Reed.

Ashley Reed contests this claim. It asserts that Burlington's defense of the trademark claims would undoubtedly have differed had only a much smaller amount of goods been involved. It also argues that, because Ashley Reed's liability with respect to the four other Third-Party Defendants is not joint and several, Ashley Reed cannot be held responsible for 100% of the legal fees and costs when it was responsible for only 5% of the counterfeit goods.

We agree. Under the indemnity agreement, Ashley Reed agreed to indemnify Burlington for all "costs (including reasonable attorney's fees)…occasioned by any allegations…that merchandise purchased hereunder from Vendor infringes any…trademark." Haigney Decl. Supp. Mot. Summ. J. Third-Party Defs. Ex. A at 3, ¶ 12. While it is true, as Burlington points out, that the fees and costs expended defending Fendi's claims of trademark infringement were, to some degree, "occasioned by" the counterfeit goods purchased from Ashley Reed, it is not true that imposing 100% of the legal fees associated with the litigation of the trademark claims on Ashley Reed is "reasonable," as the indemnity agreement requires.

In New Jersey, determination of the reasonableness of attorney's fees is a matter for the "informed judgment of the district court." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 158 (3d Cir. 1986). Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 (3d Cir. 2005). In reviewing a fee application, a district court must conduct "a thorough and searching analysis." *Evans v. Port Auth. of N.Y. & N.J.* , 273 F.3d 346, 362 (3d Cir. 2001). Courts look at, among other things, "the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action." *Interfaith Cmty. Org.*, 426 F.3d at 703.

In this case, Burlington's counsel billed at hourly rates ranging from $95 to $550. This variation in rates presumably reflects differences in position, expertise and experience. These rates are comparable to the hourly rates charged by attorneys in comparably complex intellectual property cases in New York, and we find them therefore to be reasonable. See, e.g., *Therapy Prods., Inc. v. Bissoon*, 07 Civ 8696 (DLC), 2010 U.S. Dist. LEXIS 67549, at *14–15 (S.D.N.Y. Mar. 31, 2010) (approving hourly rates for New York-based intellectual property litigation firm

of $490.00 to $580.00 for partners, $295.00 to $430.00 for associates, and $170.00 to $200.00

for paralegals); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distrib. LLC*,

665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (approving partner and associate rates of $735.00 and

$445.00, respectively); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08 Civ. 6030 (GEL), 2009 U.S.

Dist. LEXIS 128595, at *8 (S.D.N.Y. May 21, 2009) (finding hourly rates of $600.00 to $650.00

reasonable for partners specializing in intellectual property litigation).

We do not, however, find that the number of hours billed, or for that matter, the number

of attorneys staffed to the litigation, are reasonable when taking into account only the $119,857

worth of counterfeit goods provided to Burlington by Ashley Reed. Although we recognize that

in some cases, attorney's fees may exceed the size of the claim or the amount of the recovery, in

such cases, parties' bear a heightened burden of justifying the reasonableness of those fees.

*Grubbs v. Knoll*, 870 A.2d 713, 720 (N.J. Super. Ct. App. Div. 2005) (where "attorney's

time….substantially exceed[s] the result obtained for the client . . . the attorney is obliged to

document the effort"). Burlington has not met this burden. We find its assertion that its defense

against Fendi's trademark claims would have proceeded identically had the controversy involved

goods worth only $119,857, rather than goods worth $2,088,898, to be neither plausible nor

reasonable.[3]

We therefore conclude that, absent a more convincing explanation of why Ashley Reed

should be required to shoulder 100% of the legal costs involved in this multi-year and highly

complex litigation, attorney's fees should be assessed proportionately. Indeed, this is a method

New Jersey courts commonly adopt to resolve attorney fee disputes. *See, e.g.*, *Grubbs*, 870 A.2d

---

[3] The $2,088,898 figure represents the total value of the counterfeit goods at issue in the litigation. *See* Haigney Aff. ¶ 14. The $119,857 represents the value of the counterfeit goods sold to Burlington by Ashley Reed. *Id.* ¶ 18.

at 721 (imposing on defendant 10% of attorney's fees in proportion to his liability); *SL Indus. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1280 (N.J. 1992) (finding that insurers are obligated "to pay only those defense costs reasonably associated with claims covered under the policy" and that in cases involving the litigation of covered and non-covered claims, courts may determine a "fair division of the costs"). It is also a method that more adequately reflects the independent, rather than the joint and several, nature of the Third Party Defendants' liability.

Accordingly we find that Ashley Reed is responsible for 5.73781% of Burlington's total attorneys fees and costs of $1,348,906.78. This amounts to a sum of $77,397.71.

### C. Prejudgment Interest

Burlington also seeks prejudgment interest on the indemnity award. "Pursuant to New Jersey law, prejudgment interest may be awarded on contract claims in the discretion of the court in accordance with equitable principles." *DePuy Inc. v. Biomedical Eng'g Trust*, 216 F. Supp. 2d 358, 380–381 (D.N.J. 2001). "The equitable purpose of prejudgment interest is to compensate a party for lost earnings on a sum of money to which it was entitled, but which has been retained by another." *Sulcov v. 2100 Linwood Owners*, 696 A.2d 31, 43 (N.J. Super. Ct. App. Div. 1997). Prejudgment interest "is not meant to be punitive, but rather, it is a payment for the use of money." *Sulcov,* 696 A.2d at 44.

In this case, we find that equity supports awarding Burlington prejudgment interest on the $169,227.43 that Ashley Reed must pay to indemnify Burlington for that portion of the settlement payment compensating Fendi for the counterfeit goods which Ashley Reed sold to Burlington. This is money to which Burlington was entitled, under the terms of the indemnity agreement, but of which Ashley Reed had the use and enjoyment up until now. *Musto v. Vidas*, 754 A.2d 586, 598 (N.J. Super. Ct. App. Div. 2000) ("The primary consideration in awarding

prejudgment interest is that the defendant has had the use, and the plaintiff has not of the amount

in question; and the interest factor simply covers the value of the sum awarded for the

prejudgment period during which the defendant had the benefit of monies to which the plaintiff

is found to have been earlier entitled.") (citation omitted).

However, we do not find that Burlington is entitled to prejudgment interest on the

attorneys' fees and costs portion of the indemnity award. "New Jersey has a strong policy

disfavoring shifting of attorneys' fees." *N. Bergen Rex Transp. v. Trailer Leasing Co.*, 158 N.J.

561, 569 (N.J. 1999). As a result, courts generally refuse to award prejudgment interest on

attorney's fees, even when the attorney's fees are themselves specified contractually, except

when specifically provided for. *Id.* at 576 ("Absent a controlling contractual provision,

permitting prejudgment interest on attorneys' fees would be contrary to our strong public policy

disfavoring shifting of attorneys' fees."); *Gleason v. Norwest Mortg., Inc.*, No. 96-4242 (KSH),

2008 U.S. Dist. LEXIS 58381, at *15–16 (D.N.J. July 30, 2008) (same).

Accordingly, we conclude that Burlington is entitled to prejudgment interest on a total

sum of $169,227.43, to be calculated from October 10, 2010—the date on which Burlington

transferred the settlement payment to Fendi, Haigney Aff. ¶ 28—and running until the date of

this Order, April 2, 2012. This amounts to a total period of interest accrual of 540 days.

We next turn to the question of the appropriate interest rate to apply when calculating the

amount of prejudgment interest. Although the determination of the appropriate interest rate is

"subject to the trial judge's broad discretion in accordance with principles of equity."

*Musto v. Vidas*, 754 A.2d 586, 598 (N.J. Super. Ct. App. Div. 2000), courts in New Jersey tend

to apply one of two interest rates when calculating prejudgment interest in contract cases. In

cases involving creditor-debtor relationships, they tend to calculate interest based on the prime

interest rate. *See, e.g.*, *Gleason*, No. 96-4242 (KSH), 2008 U.S. Dist. LEXIS 58381, at *10 (concluding that application of the "prime [interest] rate most fairly resolves th[e] issue" of prejudgment interest); *Musto*, 754 A.2d at 599 (upholding application of the prime lending rate to calculate prejudgment interest); *Tobin v. Jersey Shore Bank*, 460 A.2d 195, 198 (N.J. Super. Ct. App. Div. 1983) ("Generally, the measure of damages to the creditor will be the cost to him of borrowing the amount of money wrongfully withheld by the debtor. In most cases that will be the prime lending rate.").

In other cases, New Jersey courts tend to apply the interest rate set forth in New Jersey Court Rule 4:42-11(a)(ii). *See Buck Consultants, Inc. v. Glenpointe Assocs.*, No. 03-454 (JLL), 2010 U.S. Dist. LEXIS 51335, at *6 (D.N.J. May 25, 2010) (noting that "absent unusual circumstances" Rule 4:42-1l(a)(ii) is "an appropriate starting point" for assessing prejudgment interest in contract cases); *DialAmerica Marketing, Inc. v. KeySpan Energy Corp.*, 865 A.2d 728, 734 (App. Div. 2005) (same); *Benevenga v. Digregorio*, 737 A.2d 696, 700 (App. Div. 1999) ("[L]acking unusual circumstances, we conclude that the rate of return earned by the State Treasurer contemplated by R. 4:42-11(a)(ii) is the standard to which trial judges should adhere" in setting a contractual prejudgment interest award).

Because the parties do not have a creditor-debtor relationship to one another, we conclude that the appropriate interest rate to apply under New Jersey law is the rate set forth in Rule 4:42-11(a)(ii). *See Buck Consultants, Inc. v. Glenpointe Assocs.*, 2010 U.S. Dist. LEXIS 51335, at *6–7 (declining to apply the prime interest rate in the absence of a debtor-creditor relationship and applying instead the rate set forth in Rule 4:42-11(a)). The rate of interest imposed by Rule 4:42-11(a)(ii) in 2010 was 1.5%. Notice to the Bar (Aug. 17, 2009).  In 2011, it

was 0.5%. Notice to the Bar (Aug. 16, 2010). In 2012, it is again 0.5%. Notice to the Bar (Sept. 15, 2011).

New Jersey law strongly disfavors compounding of interest. *See* N.J. Ct. Rule 4:42-11(a) ("Except as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and counsel fees shall bear simple interest."); *Henderson v. Camden County Mun. Util. Auth.*, 826 A.2d 615, 619 (N.J. 2003) ("Because compound interest 'unduly hastens the accumulation of debt,' courts regard it as unfairly 'harsh and oppressive.' Accordingly, compound interest is disfavored at common law.") (quoting *Abramowitz v. Washington Cemetery Ass'n*, 51 A.2d 461, 463 (N.J. Ch.1947)). We therefore calculate the prejudgment interest simply, using the interest rates set forth in Rule 4:42-11(a)(ii). Based on these calculations, we find that Ashley Reed owes Burlington a total of $1,632.00 in prejudgment interest.[4]

## IV.    Conclusion

The motion for summary judgment is granted. Third Party Defendant Ashley Reed is ordered to pay Third Party Plaintiff Burlington $169,227.43 in damages, $77,397.71 in attorney's fees and costs, and $1,632.00 in prejudgment interest. This amounts to a total award of $248,257.14.

SO ORDERED.
Dated:  April 2, 2012
        New York, NY

U.S.D.J.

---

[4] We arrive at this figure by dividing the total number of days during which interest in each of the relevant years by 365, multiplying this number by the relevant New Jersey rate, and then multiplying by $169,227.43—the amount of capital on which the interest accrued. Applying this algorithm to the facts of this case, we conclude that, in 2010, the amount of interest that accrued on the indemnity award was $570.27; in 2011, the amount of interest that accrued was $846.14; and in 2012, the amount of interest that accrued was $215.59. For a more detailed discussion of the methodology involved in the calculation of interest, see *Fendi*, 689 F. Supp. 2d at 626–628.